Let us call the next case, which is Malkan v. Mutua. I can't see the light anymore. I know. I know. Yeah. Good morning. Good morning. May it please the Court, Your Honor. My name is Jeffrey Malkan, and I'm representing myself pro se at this point in the appeal. Oh, good. Thanks. I'd like to first address the summary judgment motion and then the rule of the motion. First thing I have to say is that if a bunch of university attorneys were sitting around trying to interpret this language, this provision of the SUNY trustees' policies, and they're writing on a blank slate, then it would have been possible for them to maybe try and twist this language one way or another and say, well, if we interpret it one way, the case will come out the way we want it to. If we go the other way, it might not go the way we want it to. We don't ordinarily interpret by looking to outcomes. Well, I'm just saying that, excuse me, as they were constructing their theory of the case, they could have said, okay, this is a case of first impression. Let's just take our best shot at interpreting it in a way that is favorable for us. The problem is that they were not writing on a blank slate. The universities had an interpretation of this provision of the SUNY trustees' policies that goes back at least to the early 1970s. Over the years, they formalized their interpretation of this policy in the form of faculty bylaws, faculty contracts, faculty personnel policies, and most importantly, repeated certifications to the ABA. Let me just read the language that we're focusing on just to make sure we're all on the same page. The language, this is the renewal of term provision in the SUNY trustees' policies and it says, no term appointment of itself shall be deemed to create any manner of legal right, interest, or expectancy in any other term appointment or renewal. The question before the court is, what does the of itself clause mean in this language? The district court's ruling was that it means nothing, that the language would be exact, that the meaning of this provision would be exactly the same with or without of itself. I think the correct answer and really the only answer is that of itself is a condition that modifies the rest of the sentence and that it shows that the university allows itself to add whatever rights, interests, and expectations it deems necessary for the best functioning of the institution. And if you think about it, there's no reason why SUNY would not allow itself to offer long-term contracts to clinical faculty in its professional schools and in its law school because the university... Isn't there also a provision saying that term appointments are capped at three years? Yes, Your Honor. The appointments are also capped at three years? That's true, but the question isn't whether the term ended at the end of three years. The question is whether I had a right to due process at the end of that three years for a term renewal. I'm just pointing out that there are two clauses, there's two sets of language that you're fighting, and you're just emphasizing this one that says no term appointment should be deemed to create any manner of legal right. But it also says term appointments are capped at three years. Well, capped isn't exactly the right word because capped implies that they're not renewable. What the university grants is a presumptive... No, capped just says they have to be renewed or they disappear. I'm not disputing that it had to be renewed. I'm saying that I had a right to due process at the end of the three-year term. I think there's another factual issue that's mingled in here that may be confusing this because... Why would you have a right to due process if you had no right to an extension? That's what I'm getting at now. I'll just go back to 2009 when former Dean Olsen was writing my contract. The ABA rule at the time, and it's still the rule, it says that the clinical professors must receive presumptively renewable term contracts of a length of at least five years. It's a question of conflict between the New York regulation and the ABA rule. It wasn't really a serious conflict. It was a conflict that Dean Olsen, because the ABA was coming in in April of 2009, and he wanted to finesse the two to see whether in case the ABA focused on the three versus five-year term, he said, let's try saying we're going to give you a three-year contract with a mandatory two-year extension. That way the ABA will be happy and we won't be technically violating the... That was something that was an add-on. It was a nice try, but not successful. The question here, I'm not even disputing because that wasn't for me. That was for Dean Olsen to show to the ABA. I didn't ask for this, but I didn't see any reason why I could object to saying two years. The question here, the extra two years, the question here is whether that's severable from the rest of the contract. Dean Matua's position was, you have no contract at all. At the end of the three years, I'm not going to recognize the two-year extension, and I'm taking everything away. You have absolutely no rights at all. This is a void contract. I don't think that the intention of the parties was... It could remotely be between me and Dean Olsen to say, all or nothing, I want five years or no contract at all. That was simply an intent by the university which he did in consultation with the vice provost's office and the provost and SUNY Central Council to say... He could have given you the extension. Excuse me? He could have recognized the extension. I wish he had, but I mean... No, but on the other hand, the fact that he didn't forces us to look at the regulation. Exactly, and I'm not disputing that because there's two parts to this. If I can just go through the different pretexts that... The only reason this argument is still in front of... This issue is still in front of the court is that they've been throwing... Over the past nine years, they've thrown a lot of different pretexts, like spaghetti against the wall, and this is the only one that's still sticking. But when he originally terminated my appointment, the letter terminating me said that the reason I was being terminated was that my job was eliminated when the first year legal research and writing program was replaced by the first year legal analysis writing and research program. LRW was replaced by LAWR, and so that was the reason why he claimed he was terminating me. That has sort of gone away. His second pretext was that I'm not really a clinical professor, but I was a clinical imposter because I was teaching primarily and directing the legal writing program and teaching other courses, but I didn't have any teaching assignments in the clinic. So he says, you're not a clinical professor, you're not entitled. Are you making a discrimination claim? I don't think there's any... In the earlier part of this case, the first part of this case was an anti-union animus claim brought by the union at PERB, and that was a claim for retaliation. What has pretext got to do with it? I mean, the point is that you have to show a property interest and the pretext that they had some reason, he had a hidden reason, doesn't go to that. I understand, Your Honor. I'm only trying to make the point that they've been throwing a lot of spaghetti on the wall, and this was not their original reason for why I was terminated. This came up much later in the case. This was not even at issue in the motion to dismiss in front of Judge Arcaro. So what process do you believe you are due that you did not receive? Under the faculty bylaws and the clinical faculty appointments policy, before the dean can terminate a clinical professor, he has to bring evidence of good cause to the faculty, and the faculty has to vote and make a recommendation to terminate that. We're talking about recognizing an extension, not a termination, aren't we? No, Your Honor, because I'm willing to cede the extension and say I never cared about that in the first place. If Dean Matua didn't want to give me the two-year extension and he thinks he can get that by the ABA with just a three-year term, that's fine with me. It didn't matter to me whether my contract came up for renewal in 2009 or 2011. I'm just saying that when my contract expired, if he wanted to terminate me, it had to go before the faculty for a recommendation that he did not have the authority to terminate. It's not included at all in the SUNY rules. Well, the SUNY rule says that there is no... The SUNY rules say three years. You can get an extension or not, but it doesn't say anything about faculty approval or disapproval. What the SUNY trustees' policies say is that in and of itself, a three-year letter of appointment to a three-year term from the university does not provide any expectation of renewal, but it does not preclude the university, the law school adding contracts or rules of general application in the form of faculty bylaws, clinical policies to conform with ABA standards that provide due process at the end of every term and a good cause standard of review. And that's what I'm claiming. What would your property interest be at the time of a due process hearing with you having capped out at three years? You have to disagree with the capped out term. It's a long-term contract and the expectation was that at the end of the three-year term, it would be presumptively renewable, and what my property interest is was in those due process rules. I mean, it's not an absolute entitlement. In other words, you're saying that you do have a legal right after the three years. Yes. I'm saying that I had a right to due process. Notwithstanding that no term of appointment shall be deemed to create any manner of legal right, interest, or expectancy in the SUNY rules. Of itself. Of itself is a condition that allows the university to award, to create a property interest based on due process and a good cause standard review because no tenured professor has an absolute entitlement to property interest and employment for the rest of their lives. What you get is a property entitlement that is based on satisfactory performance and good personal conduct. It can be revoked at any time. The point is that the entitlement is that it can't be taken away from you without due process. You have well exceeded your time. You have reserved three minutes for rebuttal. We'll hear from the state representing the former dean. Okay. Thank you. Good afternoon, your honors. Jeffrey Lang on behalf of Dean Matua. The trustee's policies are very clear which are there's a three-year term. If it's non-renewed it expires automatically. But you heard Petitioner Malkin saying that the university had lots of latitude to extend it, to retreat to their other rules that required faculty approval. All of that was within the university's control. Your honor, that's simply incorrect. The trustee's policies are very clear which is that a term appointment which is what Mr. Malkin had expires after three years and there's no interest in any right, there's no interest in... The words of itself. Sure. So the words of itself just emphasize that while other types of appointments may convey some type of interest in continuing, in a continued employment, a term appointment does not convey such an interest. My guess is that if you have a term appointment and added to that is, by the way, we also have these due process rules and various other protections for people who are appointed, that removes the of itself part and that removes the application of this section shall not be deemed to create a manner of legal right because it's not of itself, there are additional conditions. So two points on that. One is that you cannot interpret the of itself language to allow a college to extend a term appointment beyond three years and SUNY's interpretation of its own regulations are entitled to deference and that interpretation is very reasonable because if you think about it, if a college which is bound by the trustee's rules could extend a term appointment indefinitely, make it four years, make it five years, make it six years, then what would be the point of saying that term appointments are limited to three years? It would obliterate the difference between term appointments and continuing appointments and it would allow a college to extend tenure to a faculty member under the guise of a term appointment just by making that term appointment presumptively renewable and to have non-renewability only for good cause. And SUNY does not interpret its own regulations to allow does not interpret that language, the of itself language to allow a college to extend a term appointment in that manner so as to create a property interest. That would be contrary to the entire intent of the regulation. And I would also say that there's a line of cases that we cited on pages 32 to 33 which say that state laws and regulations create property interests and parties through mutual understandings can't supersede those rules to create rights precluded by those rules. And in fact, Mr. Malkin is referring to, when he says the additional rights, Mr. Malkin is referring to Dean Olsen's letter, which I agree it was a good attempt to work around what seemed to be a conflict between the ABA rules and the trustees' policies, but it wasn't successful. And in fact, Dean Olsen said that he could not supersede the trustees' policies. And so when Dean Matua became dean of the law school, he looked at the rights that were purported to be conveyed in this contract and said, well, this is contrary to the trustees' policies. And the second point is that under the trustees' policies, only the chief administrative officer of the college can renew a term appointment. And here the, it was, and that's the president of SUNY Buffalo, not the dean of the law school. And here the president of SUNY Buffalo did renew Mr. Malkin's term appointment. He gave him an additional three years that expired in August 2009, and that was in accordance with the trustees' policies. So again, Dean Olsen had no power. Was it the president of SUNY Buffalo, the university, that decided not to renew for another three years? No, because non-renewal just happens automatically. You have to make a decision to renew. Affirmative decision to renew. Precisely. And let me also just address, there is no tradition of giving presumptively renewable contracts. There's no, Mr. Malkin has pointed to no examples of such contracts. The law school, he's talking about a practice at the, an alleged practice at the law school, even if there were such a practice, it wouldn't be, you know, valid because as, you know, in the cases from this court that we cited, say that any type of customs that are contrary to regulations can't supersede those regulations. And so nothing the law school could do would supersede the very clear trustees' policies on these points. But in fact, all, and there's nothing in the law school bylaws that says anything about presumptively renewable term appointments, which again is contrary to the trustees' policies, or five-year appointments, which is again contrary to the three-year cap on a term appointment. All that the law school bylaws do is establish a committee on clinical promotion which is entitled to make a non-binding recommendation to the dean as to whether a faculty member under a term appointment should be renewed. But as Dean Medua testified, if the dean has already made up his or her mind about whether a renewal is appropriate, there's no need for the dean to seek that recommendation. So, but this court, I believe, doesn't need to even reach that issue, but the fact is that Mr. Malkin had no entitlement to the process that he claims to have been entitled to. We got all the process that he was due. Well, he got all the process he was due in the sense that he simply did not have a property interest in a second term after the expiration. He got no process, but he wasn't due any. He wasn't due any process. He was not entitled to a third term after the expiration of his second term. And Dean Medua was also under no requirement to seek the recommendation of this committee when the dean had already decided that he wasn't going to renew the term. And I would add that, in fact, Mr. Malkin, in his response to Medua's statement of material facts, didn't even agree with this point about the process that he was owed. I have nothing further unless the court has any questions. Thank you. We'll hear from Mr. Malkin, who reserved three minutes for rebuttal. Two. Two minutes, I'm sorry. Thank you. I don't think we could even have a more clear-cut disagreement about what the simple facts of this are. Go back to the beginning of where I started this. The ABA put the standard 405C into place in 1993. Since then, there have been four accreditation cycles. 1995, 2002, 2009, and 2016. Where does University of Buffalo Law School stand in their accreditation cycle? Every single time. 2016, that was last year, was their most recent one. But the one that's in the record of this case is, while all these events were going on, they were in front of the ABA. And they told the ABA exactly the opposite of what the Solicitor General is telling you. They said that they offer presumptively renewable term contracts with due process that protect the academic freedom of their clinical professors. This is a core accreditation standard. That issue is not before us, is it? No, but it's evidence. The evidence is, the Solicitor General said that the university does not actually have this policy and that it really is writing on a blank slate. It is not writing on a blank slate because it can't say one thing to the ABA and the opposite to the district court. Who has the cause of action? The ABA could lift the accrediting. That's true, but they have no reason to do that because the law school certified to them and the ABA agreed that they do provide presumptively renewable contracts for clinical professors. So the ABA has no quarrel with them. Is this the right forum to track down who said what to whom and give you some evidence? The reason it's in the record isn't because I'm saying that the law school is bound by its certifications to the ABA. I'm saying that is evidence. That is evidence of what the law school's policy really is and the Solicitor General is misrepresenting the university's policies when it says that the renewal of term provision in the SUNY trustees' policies precludes presumptively renewable long-term contracts. That's simply as a fact not true unless if you want to allow the law school to tell one story to the ABA and one story to its contracts. In fact, the faculty bylaws that provide the due process procedures are still in place in the law school's webpage to this very day. And so they just have two completely conflicting stories out there and I'm saying that this is just a lie. I mean, this case has been riddled with fraud. Going back to Dean Matua's perjury and to the representations of the Attorney General about the university's policies which simply is not true. I mean, the evidence is that it's not true that they just made this up. I'm sorry that I have to be so harsh, but I mean, this has been going on for nine years. I'm sorry that I have to cut you off. My time has expired. Thank you for your patience. Reserve decision. Thank you both. Thank you. Well argued.